1  BRADLEY E. SCHWAN, Bar No. 246457
   LITTLER MENDELSON, P.C.
2  2001 Ross Avenue
   Suite 1500, Lock Box 116
3  Dallas, TX 75201-2931
   Telephone:  (214) 880-8100
4  Facsimile:  (214) 880-0181
   bschwan@littler.com
5
   Attorneys for Defendant
6  PHOENIX GLASS, INC., a Washington Corporation

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11 | DANIEL BRAMBILA, individually, and on behalf of all others similarly situated, | Case No. 4:21-cv-8266 |
   |---|---|
   | Plaintiff, | [Alameda County Superior Court Case No. RG21113094] |
   | v. | **DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331 AND 1441 [Federal Question]** |
   | PHOENIX GLASS, INC., a Washington corporation; and DOES 1 through 10, inclusive, | |
   | Defendants. | |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF DANIEL BRAMBILA AND HIS ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that Defendant Phoenix Glass, Inc. ("PGI" or "Defendant"), contemporaneously with the filing of this Notice, are effecting the removal of the above-referenced action from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

The removal is based on 28 U.S.C. §§ 1331 and 1441(a), specifically, on the following grounds:

I.   **PLEADINGS, PROCESS AND ORDERS**

1.   On or about September 14, 2021, Plaintiff Daniel Brambila ("Plaintiff") commenced the above-captioned civil action in the Alameda County Superior Court by filing a Complaint entitled *Brambila v. Phoenix Glass, Inc., et al.*, docketed as Case No. RG21113094. On September 22, 2021, the Complaint, Summons, and Civil Case Cover Sheet were served on Defendant. True and correct copies of the Complaint and the accompanying documents are attached as **Exhibit A** to the Declaration of Bradley E. Schwan in Support of Defendant's Notice of Removal of Action ("Schwan Decl.") and incorporated herein by reference. (Schwan Decl., ¶¶ 2-3, **Exhibit A**.)

2.   Plaintiff file a Proof of Service on September 29, 2021. (Schwan Decl., ¶ 4, **Exhibit B**.)

3.   Plaintiff subsequently served a Notice of Hearings on October 8, 2021. (Schwan Decl., ¶ 5, **Exhibit C**.)

4.   On October 20, 2021, the Court determined that the matter would be designated complex. (Schwan Decl., ¶ 6, **Exhibit D**.)

5.   On October 22, 2021, Defendant electronically filed an Answer in the Superior Court for Alameda County. (Schwan Decl., ¶ 7, **Exhibit E**.)

6.   To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in or issued by the Superior Court for the State of California, County of Alameda, or served by any other party other than as described above in Exhibits A through E, referenced above

and incorporated into this Notice satisfy the requirements of 28 U.S.C. § 1446. (Schwan Decl., ¶ 8.)

## II.   JURISDICTION

7. This Court has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(b), because it is a civil action that presents a federal question.

8. Plaintiff's claim requires interpretation of a collective bargaining agreement ("CBA") and thus is completely preempted by federal law under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 of the LMRA provides "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a); *Firestone v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). To ensure uniform interpretations of CBAs, federal law preempts the use of state contract law in collective bargaining agreement interpretation and enforcement. *See Lingle v. Norge Div. of Magic Chef Inc.*, 486 U.S. 399, 411 (1988).

9. Further, all state law claims raised by a union-represented employee that require interpretation of a CBA must be brought pursuant to Section 301. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985). "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988); *see Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction").

10. Section 301 specifically has been held to preempt California state law claims that are substantially dependent upon interpretation of a CBA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019); *Firestone*, 219 F.3d at 1066-67. This is so even where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause of action. *Curtis*, 913 F.3d at 1152

1  ("Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (citing *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). These principals apply equally to actions seeking civil penalties pursuant to the Private Attorneys General Act, Cal. Lab. Code § 2698 *et seq.* ("PAGA"). *Franco v. E-3 Sys.*, No. 19-cv-01453-HSG, 2019 WL 6358947, at *4 (N.D. Cal. Nov. 8, 2019) (denying motion to remand, and expressly rejecting Plaintiff's argument that § 301 cannot preempt PAGA claims).

11. **Plaintiff's Employment Was Governed by a CBA**. In the Complaint, Plaintiff alleges that he worked for Defendant from May 2019 to November 2020 through approximately December of 2020, assisting on construction projects (Complaint, ¶ 2). Defendant's records indicated it employed Plaintiff as an Apprentice Glazer from June 3, 2019 until April 16, 2021. (Declaration of Clayton Mitchell ("Mitchell Decl.") ¶ 3).

12. The terms and conditions of Plaintiff's alleged employment with Defendant were governed by a CBA between Defendant and the International Union of Painters and Allied Trade, AFL-CIO, District Council 16 (the "Union") (Mitchell Decl., ¶ 4). A true and correct copy of the CBA in effect between Defendant and the Union between July 1, 2021 through June 30, 2024 is attached as **Exhibit A** to the Mitchell Declaration and incorporated by reference ("2021 CBA"). A true and correct copy of the CBA in effect between Defendant and the Union between July 1, 2018 through June 30, 2021 is attached as **Exhibit B** to the Mitchell Declaration and incorporated by reference ("2018 CBA").

13. The Union is a labor organization within the meaning of Section 2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

14. Based on the allegations in the Complaint, Defendant is an employer within the meaning of the LMRA, 29 U.S.C. § 152(2).

15. The preamble in the 2018 CBA and 2021 CBA provide that the Union is the sole and exclusive bargaining representative of the employee members covered by the CBA pursuant to its craft jurisdiction. (Mitchell Decl., Ex. A, 2021 CBA, Preamble, p. 1; Ex. B, 2018 CBA, Preamble, p. 3).

1  The CBA covers the employment conditions at issue in Plaintiff's Complaint, including hours of work, lunch periods, rest periods, wages rates and payment, overtime, vacation pay and business expenses. (Mitchell Decl., Ex. A, 2021 CBA Secs. 11, 23(E), 26, 27, and 28; Ex. B, 2018 CBA, Secs. 11, 28(D), 30, 31, 32.)

16.  **Plaintiff's Failure to Reference the CBA or Section 301 of the LMRA in His Complaint Does Not Preclude Removal**. The Complaint omits the fact that Plaintiff was a member of the Union or that a CBA governed his employment. However, a plaintiff may not be permitted to "artfully plead" a complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), overruled in part on other grounds in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

17.  Thus, the fact that Plaintiff has not made specific reference to Section 301 in his Complaint does not preclude removal. *See Milne Emp. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991). The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

18.  An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

19.  **Resolving Plaintiff's Claims Requires Interpretation of the CBA**. The Labor Code violations underlying Plaintiff's Class Action Complaint are "founded directly on rights created by

collective bargaining agreements" and/or are substantially dependent on an analysis and interpretation of a collective bargaining agreement. *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991); *see also Caterpillar Inc.*, 482 U.S. at 394. To analyze Plaintiff's claim, therefore, the Court will necessarily need to interpret the provisions of the relevant CBA.

20. The Court cannot simply look to state law to resolve Plaintiff's artfully plead claims for breach of a CBA. Plaintiff's claims cannot be adjudicated without interpretation of the numerous CBA provisions that governed Plaintiff's employment. Plaintiff's Class Action claims allege the following: (1) failure to pay minimum and regular wages; (2) failure to pay overtime; (3) failure to provide meal periods, (4) failure to authorize and permit rest breaks; (5) failure to timely pay final wages; (6) failure to provide accurate, itemized wage statements; and (7) unfair business practice under Business and Professions Code section 17200. (Schwan Decl., Ex. A, *see generally* Complaint.)

21. The applicable CBA contains specific language governing hours of work, lunch periods, rest periods, wages rates and payment, overtime, vacation pay and business expenses. (Mitchell Decl., Ex. A, 2021 CBA Secs. 11, 23(E), 26, 27, and 28; Ex. B, 2018 CBA, Secs. 11, 28(D), 30, 31, 32.) The CBA also provides for a grievance process and a Board of Adjustment to resolve any disputes arising under the CBA. (Mitchel Decl., Ex. A, 2021 CBA, Sec. 19; Ex. B, 2018 CBA, Sec. 20.) Resolving Plaintiff's claim will require the Court to interpret each of these provisions in the applicable CBA.

22. As an example, Plaintiff's claim based on Defendant's alleged failure to pay overtime wages under Labor Code section 510 is preempted by Section 301 of the LMRA because the claim requires the Court to analyze and interpret the CBA's overtime provisions. Cal. Lab. Code § 510 ("Any work in excess of 8 hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."); *but see* Cal. Lab. Code § 514 ("Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for wages, hours of work, and working conditions of the employees, and if the agreement provides premium wages for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30% more than the state minimum wage.")*; see Curtis*, 913 F.3d 1146, 1155 (9th Cir. 2019) ("By its terms, therefore, the default definition of overtime and

1  overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA. If
2  Curtis's CBAs in this case meet the requirements of section 514, Curtis's right to overtime 'exists
3  solely as a result of the CBA,' and therefore is preempted under § 301); s*ee also Vranish v. Exxon*
4  *Mobil Corp.*, 223 Cal.App.4th 103, 110 (2014) (finding the CBA at issue fell squarely within Labor
5  Code § 514's terms, and "[n]othing in section 514 require[d]" the employer to look to the definition
6  of overtime in section 510.")

        23.    Plaintiff's hourly rate of pay, like all of the other PGI glazers, was never less than 30 percent more than the California state minimum wage for employers with more than 26 employees. (Mitchell Decl. ¶ 3.)

        24.    As another example, Plaintiff's claim based on Defendant's alleged failure to provide meal periods under Cal. Labor Code §§ 226.7 and 512 is preempted by Section 301 of the LMRA because the CBA satisfies the statutory exemption set forth at Labor Code section 512(e). The CBA provides for wages, hours of work, and working conditions; final and binding arbitration of disputes concerning application of its meal period provisions; and pay of not less than 30 percent more than the state minimum wage. (*See* Fraser Decl., ¶ 5.) Thus, the CBA governs the right to meal periods in this instance, and under step one of the *Burnside* test, Plaintiff's claim is preempted under by § 301. *See Marquez v. Toll Global Forwarding (USA) Inc.*, 2018 WL 3218102, *3 (C.D. Cal. Jun. 28, 2018) ("If a claim is grounded only on rights created by the CBA, it is preempted by § 301 and the analysis ends here.") (citing *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

        25.    In addition, whether Defendant allegedly failed to provide Plaintiff and the putative class members with meal periods requires the Court to analyze and interpret not only the CBA, but also the past practices between the alleged Defendant and the Union. The parties' past practices are deemed to be part of the CBA. *Consolidated Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 307 (1989) ("[C]ollective bargaining agreements may include implied, as well as express, terms. Furthermore, it is well established that the parties' practice, usage and custom is of significant in interpreting their agreement."). Specifically, the Court must interpret the parties' practices regarding the extent to which they agree that Plaintiff may take meal period breaks in accordance with its terms.[1]

---

[1] This same argument applies to Plaintiff's wage claims as well as his claims for rest period violations.

26. Critically, as all of Plaintiff's claims are, in essence, alleged violations of the CBA, the Court will necessarily have to interpret its grievance provision. (*See* Mitchell Decl., Ex. A, 2021 CBA, Sec. 19.) Specifically, the Court must determine whether Plaintiff was first required to exhaust the grievance procedures, whether he did in fact exhaust those procedures, and whether he agreed to arbitrate all or some of his claims. Each of these questions is reserved for federal courts pursuant to the LMRA; indeed, Section 301 preemption aims to promote extra-judicial dispute resolution pursuant to the parties' agreed form of dispute resolution. *Curtis*, 913 F.3d at 1152 (observing "the labor arbitrator is usually the appropriate adjudicator for CBA disputes" and that "grievance and arbitration procedures provide certain procedural benefits, including a more prompt and orderly settlement of CBA disputes than that offered by the ordinary judicial process.") (internal citation omitted).

27. Here, the CBAs specify that "a grievance is any dispute or controversy between the Employer, the Union and any employee covered by this Agreement, involving the meaning, interpretation or application of the provisions of this Agreement and the statutory claims specified in Section B(3)" [which specifies the following claims: "all claims arising under the Fair Labor Standards Act, the California Labor Code and the Industrial Welfare Commission Orders (e.g. Wage Order 16), all derivative claims arising under California Business and Professions Code section 17200, et seq. and all similar claims arising under any applicable local law, including but not limited to claims for: unpaid wages (e.g., claims for hours worked off the clock, overtime wages, minimum wages, incorrect rate(s) of pay and travel time); heat illness recovery violations; waiting time penalties; reimbursement of expenses ( e.g., tools, cell phone charges, mileage and subsistence); recordkeeping of personnel files, time records and payroll records; and violation of Labor Code sections 212 and 226. The foregoing list is illustrative and not exclusive."] (Mitchell Decl., Ex. A 2021 CBA, Section 19, (Section 20 (B)(3) in the 2018 CBA, Ex. B, is similar.)  Accordingly, an alleged violation of the CBA is subject to the grievance procedure, which serves the underlying purposes of the LMRA. Thus, no part of Plaintiff's claim may be resolved without interpreting provisions of the CBA.

28. Plaintiff's claims are substantially dependent upon the interpretation of the CBA's terms and provisions. In fact, the CBA's terms and provisions govern all of the conduct that forms the basis for Plaintiff's Complaint and are thus essential to the resolution of Plaintiff's claims. The

underlying Labor Code violations arise under § 301 of the LMRA and warrant removal to federal court.

### III.   SUPPLEMENTAL JURISDICTION

29.   To the extent there are certain underlying alleged Labor Code violations that do not arise under Section 301 of the LMRA, the class action claims based on those violations remains within the supplemental jurisdiction of the Court under 28 U.S.C. § 1367(a) in that they are so related to the federal cause of action that they form part of the same case or controversy under Article III of the United States Constitution. *See Buck v. Cemex, Inc.*, 2013 U.S. Dist. LEXIS 124111, at *17 (plaintiff's additional claims of failure to provide accurate wage statements, failure to timely pay all final wages and unfair competition came within the supplemental jurisdiction of the Court even if only tangentially involved with the CBA); *see also Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1100 (N.D. Cal. 2014) (recognizing that plaintiff's additional state law claims under California statutory and common law, including various provisions of the Labor Code and IWC Orders, all "derive from a common nucleus of operative fact" as plaintiff's meal period and overtime claims and "are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."). Thus, this action is removable in its entirety.

### IV.   INTRADISTRICT ASSIGNMENT

30.   Venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 84(a), 1441(a), and 1446(a). Plaintiff worked for and was an employee of Defendant in Alameda County, California. (Compl., ¶ 13.)

31.   All civil actions that arise in the County of Alameda shall be assigned to the San Francisco Division or the Oakland Division. Northern District Local Rule 3-2(c)(d), 3-5(b). As a result, assignment to the San Francisco or Oakland Division is proper.

### V.   TIMELINESS OF REMOVAL

32.   Defendant was served with the Summons and Complaint on September 22, 2021. (*See* Schwan Decl. ¶ 3, Ex. A.) This Notice of Removal has been filed within thirty (30) days of service on Defendants of the Summons and Complaint and within one year of the filing of the Complaint. 28 U.S.C. § 1446(b); *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999)

("[A] named defendant's time to remove is triggered by the simultaneous service of the summons and complaint, or receipt of the complaint 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.") Therefore, the Notice is timely filed.

## VI. NOTICE TO PLAINTIFF AND THE STATE COURT

33. Contemporaneously with the filing of this Notice in this Court, written notice of such filing will be provided to Plaintiff's counsel of record Kane Moon, and Lilit Ter-Astvatsatryan, Moon & Yang, APC, 1055 W. Seventh St. Suite 1880, Los Angeles, California 90017.

34. A copy of the Notice of Removal will also be filed with the Clerk of the Superior Court of the County of Alameda.

## VII. CONCLUSIONS

35. For all of the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1441(a) and removal is therefore proper under 28 U.S.C. §§ 1441 and 1446.

Dated: October 22, 2021

LITTLER MENDELSON P.C.

*/s/ Bradley E. Schwan*
Bradley E. Schwan

Attorneys for Defendant
PHOENIX GLASS, INC.

4881-6958-2848.1 / 114020-1001